# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **CLARENCE GUIDRY, JR.** | **CIVIL ACTION NO. 3:10-cv-1271** |
|       LA. DOC#112601 | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **WARDEN ALVIN JONES, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Clarence Guidry, Jr., proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on July 27, 2010. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Bossier Medium Corrections Facility, Plain Dealing, Louisiana; however, when he filed this complaint he was incarcerated at the River Bend Detention Center (RBDC), Lake Providence. While his suit was pending, he was transferred first to the Caldwell Corrections Center, and then to his present place of confinement.  Plaintiff claims that the two named defendants, RBDC Warden Alvin Jones and Capt. Gregory Williams, delayed in providing medical treatment for a snake bite, were responsible for various unconstitutional conditions of confinement, and denied plaintiff his right of access to the courts.  Plaintiff prayed for compensatory and punitive damages.

     This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

*Background*

*1. Original Complaint [Doc. #1]*

    *a. Medical Care*

In his original complaint, filed on July 27, 2010, plaintiff alleged that on May 9, 2010, while plaintiff was incarcerated at the RBDC, he was bitten by a snake. On some unspecified date he requested medical attention from the Warden, but the Warden refused his request. Plaintiff then went to the prison medical department and requested treatment. They too, initially refused. Eight days later, however, he was examined by a physician who concluded that plaintiff had been bitten by a snake. The physician (or his nurse) noted that plaintiff was "very swollen and infected." (Plaintiff did not allege what if any treatment was provided by the physician; nor did he allege the current status of his injury.)

    *b. Access to Courts*

Plaintiff also claimed that he was ordered to appear before Louisiana's Sixteenth Judicial District Court on June 21, 2010. However, when that day arrived, prison authorities refused to transport plaintiff and as a consequence a bench warrant was issued commanding plaintiff's arrest.

Plaintiff also complained that he was unable to perfect the appeal of his criminal conviction because of the inadequacies of the RBDC Law Library. Plaintiff also complained that RBDC officials open and view his incoming "legal mail" and tamper with outgoing and incoming mail.

    *c. Conditions of Confinement*

With regard to conditions of his confinement, he also complained that Warden Jones does not permit outdoor recreation.

*2. First Amend Order and First Amended Complaint [Docs. #7 and #8]*

On October 13, 2010, the undersigned completed an initial review and directed plaintiff to amend his complaint to comply with the provisions of Rule 8 of the Federal Rules of Civil Procedure. Accordingly, plaintiff was directed to amend his complaint to provide –

(1) the name of each person who allegedly violated plaintiff's constitutional rights;

(2) a description of what actually occurred or what each defendant did to violate plaintiff's rights;

(3) the place and date(s) that each event occurred; and

(4) a description of the alleged injury sustained as a result of the alleged violation.

The Amend Order also noted that plaintiff had alleged no specific fault on the part of the two named defendants, Warden Alvin Jones and Corrections Officer Gregory Williams. (The original complaint did not mention Williams and only alleged, with regard to Warden Jones, "... the Warden in his full capacity has refuse[d] the petitioner medical treatment..." )Plaintiff was therefore instructed to amend to provide facts to support his claims against these two defendants.

Plaintiff was also directed to provide more detailed information with regard to the nature of the hearing he missed in the Sixteenth Judicial District Court, and to describe whether he communicated with that Court to explain his absence. He was also ordered to describe the harm or prejudice he sustained as a result of missing his court date.

Finally, with regard to his access to courts claim, he was directed to explain the nature of the proceeding that he wanted to litigate in the Court of Appeal and to state whether he was represented by counsel in that proceeding and/or whether counsel was offered but he declined. He was also ordered to demonstrate the nature of the harm or prejudice he suffered as a result of the library

deficiencies and the alleged interference with his out-going and in-coming mail.

On November 16, 2010, plaintiff submitted a 1-page hand-written pleading. In that pleading, which was virtually indecipherable, he alleged that he had been transferred and was incarcerated at the Bossier Medium Security facility. He complained that deficiencies in that facility's law library, and the law libraries at Caldwell Corrections Center (where he was housed for a short time after his transfer from River Bend) and RBDC– specifically the lack of up-to-date federal law books – made it impossible for him to respond to the Memorandum Order directing him to amend. Plaintiff requested appointment of counsel and a transfer to a Department of Corrections facility where he would have access to an appropriate law library. These motions were denied on February 15 and 16, 2011. [Docs. #11 and #12]

## *2. Second Order to Amend and Second Amended Complaint [Docs. #10 and #13]*

Plaintiff's first amended complaint failed to address any of the concerns raised in the Amend Order, nor did it supply any of the facts that plaintiff was ordered to supply. Therefore, on February 16, 2011, plaintiff was again directed to amend his complaint. In the second amend order, the undersigned observed:

> Plaintiff continues to complain that the inadequacies of the prison law libraries at River Bend Detention Center, Caldwell Corrections Center, and his present place of confinement [Bossier Medium Security Facility] have prevented him from complying with the October 13, 2010 order to amend. [Docs. # 8-9] Plaintiff does not need access to any law books in order to comply with the October 13, 2010 amend order. **HE WAS DIRECTED TO PROVIDE FACTS, NOT LEGAL ARGUMENT WITH RESPECT TO HIS CLAIMS OF DELAYED MEDICAL CARE, ACCESS TO COURTS, INTERFERENCE WITH MAIL, AND GENERAL CONDITIONS OF CONFINEMENT.**

Plaintiff was again ordered to amend his complaint to cure the deficiencies previously noted,

and alternatively, dismiss those claims or defendants plaintiff is unable to cure through amendment. He was specifically directed to **"PROVIDE A LEGIBLE AND DETAILED STATEMENT OF HIS CLAIMS FOR RELIEF AND [to] PROVIDE THE INFORMATION REQUIRED BY RULE 8 of the Federal Rules of Civil Procedure, namely,** (1) the name(s) of **each** person who allegedly violated plaintiff's constitutional rights; (2) a description of what actually occurred or what **each** defendant did to violate plaintiff's rights; (3) the place and date(s) that **each** event occurred; and (4) a description of the alleged **injury sustained** as a result of the alleged violation." [Doc. #10]

On March 2, 2011, he submitted another virtually indecipherable hand-written pleading. Therein he alleged that on May 9 or 11, 2010, he was bitten by a snake while he was incarcerated at the RBDC. According to plaintiff, he asked Cadet "Mr. People" or "the man with the burned hand" to notify the shift lieutenant on duty and the officer agreed to do so; however, the officer also directed plaintiff to submit a written medical request. Plaintiff did as he was directed but received no assistance from "Lt. Rusell, or Lt. Mr. Mookies, or Lt. Mr. Tee." Plaintiff suffered nausea for a period of four to five days before he was summoned to the nurse's station; the Nurse, Nurse Deanna S., examined him and determined that he was running a fever and although she put him on the list of inmates who would be transported to a physician, he was nevertheless advised that there would be a delay.

Plaintiff then requested to speak to Captain Williams, but he received no reply. According to plaintiff he wrote a request to Captain Williams every day for nine days. When he received no response he requested an opportunity to visit the law library.

During this period he was required to walk to the kitchen for meals; due to the pain, he did not wear a sock or shoe on his left foot and unnamed corrections officials "got on" him for that.

5

According to plaintiff his leg and foot were swollen to "three times it regular size."

When plaintiff was being examined by Nurse Deanna S., Captain Williams, whose office was nearby, approached plaintiff and asked him questions about his prior military service. Plaintiff did not want to participate in the conversation and asked Williams for a complaint form to file a Section 1983 complaint. When Williams asked him why he needed a complaint, plaintiff explained that he had been writing grievances from May 9 through 19, 2010 and had yet to receive a response. He also complained to Captain Williams that he had complained about having caught cold because he was forced to take cold showers because the facility's hot-water system was broken, and these grievances were also ignored. Plaintiff said he even complained to Senator Landrieu and to President Obama about the conditions at RBDC.

Plaintiff was ultimately examined by a physician approximately 9 days after the snake bite. (In the original complaint plaintiff alleged that he was seen by a physician 8 days after he sustained his injury.) The physician's nurse determined that plaintiff had a fever; plaintiff also complained to the nurse that he had contracted a cold because there was no hot water at the prison. When the physician examined him he opined that plaintiff had in fact been bitten by a snake. The physician prescribed bed rest, elevation of the leg, and antibiotics for a period of 4 to 6 weeks.

When plaintiff returned to RBDC plaintiff asked the Warden for the Sheriff's name, address, and telephone number. Shortly thereafter, plaintiff was transferred to Caldwell Parish Detention Center.

Apparently someone opened plaintiff's "legal mail" while he was at RBDC. When he complained, he was told that it was the secretary and that if she did so, she did it by mistake, and did not read it.

6

Plaintiff also complained about prior criminal acts allegedly committed by Captain Williams; however, none of the acts complained of involved the plaintiff. He did however, complain that his repeated requests to obtain a Section 1983 complaint form were ignored and made light of by Captain Williams.

The remainder of plaintiff's second amended complaint provided a brief biography and family history, the relevance of which to his pending complaint is unclear. Plaintiff did not address his access to courts claim nor his conditions of confinement claim.

### *Law and Analysis*

*1. Screening*

When a prisoner files a complaint in a civil action seeking redress from a governmental entity or officer or employee of a governmental entity, the district court is obliged to review the complaint as soon as is feasible and to dismiss the case if it determines that the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915 and 1915A, and 42 U.S.C. § 1997e(c).

A claim is frivolous if it has no arguable basis in law or fact. *Nietzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir.1998) (quotation omitted).

A civil rights plaintiff must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal*, ___

7

U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

Plaintiff's original complaint was difficult to decipher; he was provided instruction on relevant areas of the law and ordered to amend to provide specific <u>facts</u> to support his claim that the named defendants denied or delayed providing appropriate medical care, denied or interfered with his right of access to the courts, and exposed him to unconstitutional conditions of confinement.

In response to the order, plaintiff filed an amended complaint which provided none of the detailed information requested; accordingly, he was afforded a second chance to bolster his pleadings with factual support. His second amended complaint provided some additional factual support for his medical care claim but failed to address his access to courts claim or his general conditions of confinement claim, other than an oblique reference to the lack of hot water at the facility.

*2. Conditions of Confinement and Medical Care*

The constitutional right of a convicted prisoner to safe conditions of confinement and prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury.

Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Johnson v. Treen*, 759 F.2d 1236 (5th Cir.1985).

Plaintiff complained of general conditions of confinement in his original complaint and he was twice directed to amend to provide the detail necessary to comply with the pleading

requirements set forth in Rule 8 of the Federal Rules of Civil Procedure. Plaintiff apparently abandoned his original conditions of confinement claim – lack of outdoor recreation – because he failed to comply with the amend orders. As noted above, in his second amended complaint he alleged for the first time that he was aggrieved by the lack of hot water at RBDC for some unspecified period of time. Plaintiff has apparently abandoned his lack of recreation claim; with regard to the lack of hot water claim, plaintiff's factual assertions simply do not establish that either of the named defendants were deliberately indifferent to his plight. With regard to the injury or harm he claimed to have suffered as a result of this condition, plaintiff only complained that he caught a "cold." It does not appear that he ever complained of this condition to the defendants and therefore he cannot establish deliberate indifference on their part. Further, even if the defendants were deliberately indifferent, plaintiff has not shown that he was at substantial risk for receiving serious harm.

Plaintiff did provide additional factual support for his delayed medical care claim. However, whether the plaintiff received the treatment that he felt he should have is not the issue. *Estelle v. Gamble*, *supra; Woodall v. Foti*, 648 F.2d 268 (5th Cir.1981). Under the deliberate indifference standard which applies to such cases, negligence, neglect, medical malpractice or unsuccessful medical treatment simply do not give rise to a §1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir.1991); *Johnson v. Treen, supra*. Instead, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). As stated in *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* A delay in providing medical care is not a violation of this constitutional right unless it results in substantial harm. *Mendoza v.*

*Lynaugh*, 989 F.2d 191 (5th Cir.1993).

Here, plaintiff's medical care, while delayed, was never denied, and plaintiff, although he was twice directed to do so, failed to allege that the delay resulted in anything that could be liberally characterized as "substantial harm." This failure on his part is fatal to his claim. Plaintiff has only alleged that as a result of the delay in receiving treatment he suffered a fever and swelling, both of which were apparently resolved by short term treatment with antibiotics and the elevation of the swollen limb. *Compare, O'Bryant v. Culpepper*, 214 F.3d 1350 (5th Cir.2000)("Although [plaintiff] was injured on a Saturday and did not receive treatment until the following Tuesday, he cannot show that the delay in treating his injury caused substantial harm").

### 3. Access to Courts

In his original complaint, plaintiff alleged that the defendants interfered with his right of access to the Courts in three ways: first, by not transporting him to a scheduled hearing in another jurisdiction; second, by providing a substandard law library which interfered with his right to appeal his conviction; and third, by opening and reading his incoming legal mail.

"It has long been recognized that prisoners generally enjoy the constitutional right of access to the court." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999). *See Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). The right of access to the court is not unlimited, however, and includes "only a reasonable opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). Put another way, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass

more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996). A prisoner's right of access to the courts encompasses nothing more than the ability of the inmate to prepare and transmit a necessary legal document to a court. *Brewer v. Wilkinson*, 3 F.3d at 821; *Lewis v. Casey*, 518 U.S. at 351, 116 S.Ct. at 2179-81; *Norton v. Dimazana*, 122 F.3d at 290; and *Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir.1996).

Plaintiff was twice instructed to amend his complaint to flesh out the factual basis of his claim. He omitted any reference to his access to court claim in both the first and second amended complaints and therefore, it must be presumed that he has abandoned the claim.

Nevertheless, based on the facts thus far alleged, it is clear that plaintiff has not shown how his ability to prepare and transmit legal documents to this court or any other has in any way been inhibited. Indeed, such a claim by plaintiff would be ludicrous. The records of this Court indicate that plaintiff has been allowed to freely litigate this civil action. With regard to other proposed civil actions or criminal appeals, plaintiff has failed to identify the nature of those actions and, more importantly, he has not shown how his ability to file pleadings in other courts has been interfered with by the defendants. With regard to his claim that deficiencies in the various prison law libraries interfered with his appeal, such claim appears to be without merit. It must be presumed that plaintiff was, as are all Louisiana criminal defendants, afforded the right to either retained or appointed appellate counsel for the purposes of his appeal of right following conviction. A prisoner's right of access to the courts in this regard is satisfied either by the appointment of appellate counsel or the offer to appoint such counsel. *Compare Degrate v. Godwin*, 84 F.3d 768, 768-69 (5th Cir.1996).

Finally, in order for plaintiff to state a claim that he was denied his constitutional right of access to the courts, he must "demonstrate[ ] that his position as a litigant was prejudiced by his denial of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. The Supreme Court, discussing the "actual injury" requirement held that: "The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355. The Court further held that this right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.*

Plaintiff has not shown that the complained of conduct or circumstances in any way deprived him of the ability to transmit legal documents to this or any other court; further, he has not shown that any acts or omissions of the defendants prejudiced him with regard to past or pending prisoner litigation. As noted above, plaintiff has not alleged any facts to establish that he was in any way prejudiced by his failure to appear before the Sixteenth Judicial District Court; nor has he alleged that he was prejudiced in any way with regard to the appeal of his conviction. Finally, with regard to his claim that others opened and read his incoming legal mail, he has again showed no prejudice resulting from that act.

In other words, plaintiff's claim that his access to the courts was interfered with are frivolous.

*Conclusion and Recommendation*

Plaintiff's complaints do not establish any Constitutional violations. Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14)days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

**In Chambers, Monroe, Louisiana, April 19, 2011.**

KAREN L. HAYES
U. S. MAGISTRATE JUDGE